# EXHIBIT 3

DT          2009022364

18 PGS

**RECORDATION**
  **REQUESTED BY:**
  Celtic Bank Corporation
  340 East 400 South
  Salt Lake City, UT 84111

**WHEN RECORDED MAIL**
  **TO:**
  Celtic Bank Corporation
  340 East 400 South
  Salt Lake City, UT 84111

**SEND TAX NOTICES TO:**
  Celtic Bank Corporation
  340 East 400 South
  Salt Lake City, UT 84111                          FOR RECORDER'S USE ONLY

0903822 DPF

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

## DEED OF TRUST

**THIS DEED OF TRUST is dated March 27, 2009, among JACOBS & SON ENTERPRISES, INC. ("Grantor"); Celtic Bank Corporation, whose address is 340 East 400 South, Salt Lake City, UT 84111 (referred to below sometimes as "Beneficiary"); and Celtic Bank Corporation, whose address is 340 East 400 South , Salt Lake City, UT 84111 (referred to below as "Trustee").**

CONVEYANCE AND GRANT. For valuable consideration, Grantor conveys to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; and all easements, rights of way, and appurtenances; all water and water rights; and all other rights, royalties, and profits relating to the real property, including without limitation such rights as Grantor may have in all minerals, oil, gas, geothermal and similar matters, **(the "Real Property") located in Williamson (as to Tract 1); San Saba (as to Tract 2 and 3) County, State of Texas:**

> **See Exhibit A, which is attached to this Deed of Trust and made a part of this Deed of Trust as if fully set forth herein.**

**The Real Property or its address is commonly known as 1408 North Bell Blvd. (as to Tract 1); 1210 W. Pierce (as to Tract 3, Parcels 1, 2, 3, and 4), Cedar Park (as to Tract 1); San Saba (as to Tract 2 and 3), TX 78613. The Real Property tax identification number is 17-W339-0100-0001-0010 (as to Tract 1); 32224 (as to Tract 2); 85 (as to Tract 2); 5098 (as to Tract 3, Parcel 1); 5094 (as to Tract 3, Parcel 2); 4959 (as to Tract 3, Parcel 3); 4958 (as to Tract 3, Parcel 4).**

Grantor hereby absolutely assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

GRANTOR'S REPRESENTATIONS AND WARRANTIES. Grantor warrants that: (a) this Deed of Trust is executed at Borrower's request and not at the request of Lender; (b) Grantor has the full power, right, and authority to enter into this Deed of Trust and to hypothecate the Property; (c) the provisions of this Deed of Trust do not conflict with, or

## DEED OF TRUST
**Loan No: 15009287** | **(Continued)** | **Page 2**

result in a default under any agreement or other instrument binding upon Grantor and do not result in a violation of any law, regulation, court decree or order applicable to Grantor;  (d) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and  (e) Lender has made no representation to Grantor about Borrower (including without limitation the creditworthiness of Borrower).

**GRANTOR'S WAIVERS.** Grantor waives all rights or defenses arising by reason of any "one action" or "anti-deficiency" law, or any other law which may prevent Lender from bringing any action against Grantor, including a claim for deficiency to the extent Lender is otherwise entitled to a claim for deficiency, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale.

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Deed of Trust, Borrower shall pay to Lender all Indebtedness secured by this Deed of Trust as it becomes due, and Borrower and Grantor shall perform all their respective obligations under the Note, this Deed of Trust, and the Related Documents.

**PURPOSE OF LOAN.** The Note in the amount of $1,726,000.00 represents, in part or in whole, cash or other financial accommodations advanced or committed by Lender to Borrower on April 1, 2009 at Grantor's request and which Grantor will use under its charter powers to discharge corporate debts.  Grantor represents to Lender that its board of directors has authorized its legally elected, qualified, and acting officers to execute the Note and this Deed of Trust.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.**  Borrower and Grantor agree that Borrower's and Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.**  Until the occurrence of an Event of Default, Grantor may  (1)  remain in possession and control of the Property;  (2)  use, operate or manage the Property; and  (3)  collect the Rents from the Property.

**Duty to Maintain.**  Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.**  Grantor represents and warrants to Lender that:  (1)  During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property;  (2)  Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing,  (a)  any breach or violation of any Environmental Laws,  (b)  any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or  (c)  any actual or threatened litigation or claims of any kind by any person relating to such matters; and  (3)  Except as previously disclosed to and acknowledged by Lender in writing,  (a)  neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and  (b)  any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws.  Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust.  Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person.  The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances.  Grantor hereby  (1)  releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and  (2)  agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor.  The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.**  Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property.  Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.  This restriction will not apply to rights and easements (such as gas and oil) not owned by Grantor and of which Grantor has informed Lender in writing prior to Grantor's signing of this Deed of Trust.

**Removal of Improvements.**  Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent.  As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**DEED OF TRUST**

**(Continued)**

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Texas law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and Lender's reasonable attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require. Policies shall be written in

# DEED OF TRUST

form, amounts, coverages and basis reasonably acceptable to Lender, with losses made payable to Lender. GRANTOR MAY FURNISH THE REQUIRED INSURANCE WHETHER THROUGH EXISTING POLICIES OWNED OR CONTROLLED BY GRANTOR OR THROUGH EQUIVALENT INSURANCE FROM ANY INSURANCE COMPANY AUTHORIZED TO TRANSACT BUSINESS IN THE STATE OF TEXAS. If Grantor fails to provide any required insurance or fails to continue such insurance in force, Lender may, but shall not be required to, do so at Grantor's expense, and the cost of the insurance will be added to the Indebtedness. If any such insurance is procured by Lender, Grantor will be so notified, and Grantor will have the option of furnishing equivalent insurance through any insurer authorized to transact business in Texas. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Grantor's Report on Insurance.** Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. To the extent permitted by applicable law, all such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

Title. Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Grantor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

Defense of Title. Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Trustee or Lender under this Deed of Trust, Grantor shall defend the

**DEED OF TRUST**

**(Continued)**

action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full.

**CONDEMNATION, JUDGMENTS AND AWARDS.** The following provisions relating to condemnation proceedings, judgments, decrees and awards for injury to the Property are a part of this Deed of Trust:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** To the extent permitted by applicable law, all judgments, decrees and awards for injury or damage to the Property, or any part of the Property, and awards pursuant to proceedings for condemnation of the Property, are hereby absolutely assigned to Lender, and if all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award, judgment or decree shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Deed of Trust in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Deed of Trust as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Borrower's and Grantor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints

**DEED OF TRUST**
**(Continued)**

Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Borrower and Grantor pay all the Indebtedness when due, and Grantor otherwise performs all the obligations imposed upon Grantor under this Deed of Trust, Lender shall execute and deliver to Grantor a release of this Deed of Trust lien and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. However, it is agreed that the payment of all the Indebtedness and performance of such obligations shall not terminate this Deed of Trust unless the liens and interests created hereby are released by Lender by a proper recordable instrument. Any filing fees required by law shall be paid by Grantor, if permitted by applicable law.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower or Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Grantor.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Grantor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Default in Favor of Third Parties.** Should Borrower or any Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or any Grantor's property or Borrower's ability to repay the Indebtedness or Borrower's or Grantor's ability to perform their respective obligations under this Deed of Trust or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Borrower's or Grantor's existence as a going business, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Borrower's or Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Borrower or Grantor under the terms of any other agreement between Borrower or Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Borrower or Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Borrower's or Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**DEED OF TRUST**
**(Continued)**

Loan No: 15009287

Page 7

**Right to Cure.** If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Deed of Trust within the preceding twelve (12) months, it may be cured if Grantor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within thirty (30) days; or (2) if the cure requires more than thirty (30) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Deed of Trust, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Accelerate Indebtedness.** Lender may declare the unpaid principal balance of the Indebtedness due and payable. In no event will Borrower or Grantor be required to pay any unearned interest.

**Foreclosure.** If Lender invokes the power of sale, Trustee, at the request of Lender, may sell all or any portion of the Property at public auction to the highest bidder for cash at the location within the courthouse designated by the County Commissioners Court, or if no such area has been designated, at the area designated in the notice of sale within the courthouse, between the hours of 10:00 A.M. and 4:00 P.M. on the first Tuesday of any month, after the Trustee or its agent has given notice of the time and place of sale and of the property to be sold as required by the Texas Property Code, as then amended.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** As additional security for the payment of the Indebtedness, Grantor hereby absolutely assigns to Lender all Rents as defined in the Definitions section of this Deed of Trust. Until the occurrence of an Event of Default, Grantor is granted a license to collect and retain the Rents; however, upon receipt from Lender of a notice that an Event of Default exists under this Deed of Trust, Lender may terminate Grantor's license, and then Lender, as Grantor's agent, may collect the Rents. In addition, if the Property is vacant, Lender may rent or lease the Property. Lender shall not be liable for its failure to rent the Property, to collect any Rents, or to exercise diligence in any matter relating to the Rents; Lender shall be accountable only for Rents actually received. Lender neither has nor assumes any obligation as lessor or landlord with respect to any occupant of the Property. Rents so received shall be applied by Lender first to the remaining unpaid balance of the Indebtedness, in such order or manner as Lender shall elect, and the residue, if any, shall be paid to the person or persons legally entitled to the residue.

**Trustee's Powers.** Grantor hereby jointly and severally authorizes and empowers Trustee to sell all or any portion of the Property together or in lots or parcels, as Trustee may deem expedient, and to execute and deliver to the purchaser or purchasers of such Property good and sufficient deeds of conveyance of fee simple title, or of lesser estates, and bills of sale and assignments, with covenants of general warranty made on Grantor's behalf. In no event shall Trustee be required to exhibit, present or display at any such sale any of the Property to be sold at such sale. The Trustee making such sale shall receive the proceeds of the sale and shall apply the same as provided below. Payment of the purchase price to Trustee shall satisfy the liability of the purchaser at any such sale of the Property, and such person shall not be bound to look after the application of the proceeds.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Borrower or Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, (2) vacate the Property immediately upon the demand of Lender, or (3) if such tenants refuse to surrender possession of the Property upon demand, the purchaser shall be entitled to institute and maintain the statutory action of forcible entry and detainer and procure a writ of possession thereunder, and Grantor expressly waives all damages sustained by reason thereof.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Borrower and Grantor hereby waives any and all

**DEED OF TRUST**

**(Continued)**

rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property. Trustee may convey all or any part of the Property to the highest bidder for cash with a general warranty binding Grantor, subject to prior liens and to other exceptions to conveyance and warranty. Grantor waives all requirements of appraisement, if any. The affidavit of any person having knowledge of the facts to the effect that proper notice as required by the Texas Property Code was given shall be prima facie evidence of the fact that such notice was in fact given. Recitals and statements of fact in any notice or in any conveyance to the purchaser or purchasers of the Property in any foreclosure sale under this Deed of Trust shall be prima facie evidence of the truth of such facts, and all prerequisites and requirements necessary to the validity of any such sale shall be presumed to have been performed. Any sale under the powers granted by this Deed of Trust shall be a perpetual bar against Grantor, Grantor's heirs, successors, assigns and legal representatives.

**Proceeds.** Trustee shall pay the proceeds of any sale of the Property (a) first, to the expenses of foreclosure, including reasonable fees or charges paid to the Trustee, including but not limited to fees for enforcing the lien, posting for sale, selling, or releasing the Property, (b) then to Lender the full amount of the Indebtedness, (c) then to any amount required by law to be paid before payment to Grantor, and (d) the balance, if any, to Grantor.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as Lender's attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including Lender's reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law. In the event of foreclosure of this Deed of Trust, Lender shall be entitled to recover from Borrower or Grantor Lender's reasonable attorneys' fees and actual disbursements that Lender necessarily incurs in pursuing such foreclosure.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Grantor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other lienholder of the Property or the commencement of a foreclosure proceeding or of the commencement of any other action to which Lender may avail itself as a remedy, except to the extent required by applicable law or by written agreement.

**Trustee.** In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Substitute Trustee.** Lender, at Lender's option, from time to time, and more than once, may appoint in writing a successor or substitute trustee, with or without cause, including the resignation, absence, death, inability, refusal or failure to act of the Trustee. The successor or substitute trustee may be appointed without ever requiring the resignation of the former trustee and without any formality except for the execution and acknowledgment of the appointment by the beneficiary of this Deed of Trust. The successor or substitute trustee shall then succeed to all rights, obligations, and duties of the Trustee. This appointment may be made on Lender's behalf by the President, any Vice President, Secretary, or Cashier of Lender.

**NOTICES.** Any notice required to be given under this Deed of Trust, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to

**DEED OF TRUST**
**(Continued)**

any Grantor is deemed to be notice given to all Grantors.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Applicable Law.** The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations: (a) When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law. (b) Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan. Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Salt Lake County, State of Utah.

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Deed of Trust shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Grantor signing below is responsible for all obligations in this Deed of Trust. Where any one or more of the parties is a corporation, partnership, limited liability company or similar entity, it is not necessary for Lender to inquire into the powers of any of the officers, directors, partners, members, or other agents acting or purporting to act on the entity's behalf, and any obligations made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Deed of Trust.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any person or circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other person or circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Grantor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**DEED OF TRUST**

**Waive Jury.** All parties to this Deed of Trust hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means Celtic Bank Corporation, and its successors and assigns.

**Borrower.** The word "Borrower" means JACOBS & SON ENTERPRISES, INC. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Grantor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Default.** The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Grantor.** The word "Grantor" means JACOBS & SON ENTERPRISES, INC.; Tony L. Jacobs; and Janie S. Jacobs.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Trustee or Lender to enforce Grantor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means Celtic Bank Corporation, its successors and assigns.

**Note.** The word "Note" means the promissory note dated March 27, 2009, **in the original principal amount of $1,726,000.00** from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. **NOTICE TO GRANTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.**

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**DEED OF TRUST**

Loan No: 15009287         **(Continued)**         Page 11

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**Trustee.** The word "Trustee" means Celtic Bank Corporation, whose address is 340 East 400 South , Salt Lake City, UT 84111 and any substitute or successor trustees.

**EACH GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND EACH GRANTOR AGREES TO ITS TERMS.**

**GRANTOR:**

JACOBS & SON ENTERPRISES, INC.

By: _____
     Tony L. Jacobs, CEO of JACOBS & SON ENTERPRISES, INC.

By: _____
     Dean A. Smith, President of JACOBS & SON ENTERPRISES, INC.

By: _____
     Janie S. Jacobs, Secretary of JACOBS & SON ENTERPRISES, INC.

X _____
     Tony L. Jacobs, Individually

X _____
     Janie S. Jacobs, Individually

**Loan No: 15009287**

**DEED OF TRUST**
**(Continued)**

**Page 12**

## CORPORATE ACKNOWLEDGMENT

STATE OF ___TeXAS___ )
                     ) SS
COUNTY OF ___TRAViS___ )

This instrument was acknowledged before me on ___MAR. 27___, 20 09, by Tony L. Jacobs, CEO of JACOBS & SON ENTERPRISES, INC.; Dean A. Smith, President of JACOBS & SON ENTERPRISES, INC.; and Janie S. Jacobs, Secretary of JACOBS & SON ENTERPRISES, INC. a Texas corporation, on behalf of said corporation.

DAN P PHARES
Notary Public, State Of Texas
My Commission Expires
08-31-2009

_____
Notary Public, State of Texas

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF ___TeXAS___ )
                     ) SS
COUNTY OF ___TRAViS___ )

This instrument was acknowledged before me on ___MAR. 27___, 20 09, by Tony L. Jacobs and Janie S. Jacobs.

DAN P PHARES
Notary Public, State Of Texas
My Commission Expires
08-31-2009

_____
Notary Public, State of Texas

LASER PRO Lending, Ver. 5.44.00.002  Copr. Harland Financial Solutions, Inc. 1997, 2009.  All Rights Reserved.  -
TX/UT  F:\APPS\CFIWIN\CFNLPL\G01.FC  TR-2216  PR-9





Exhibit A

**Tract One:** Lot 1, Replat of Lots 14-18, R. E. Newsom Mobile Home Subdivision, a subdivision in Williamson County, Texas according to the plat thereof recorded in Cabinet L, Slide 341, Plat Records, Williamson County, Texas.

**TRACT TWO:**

150.00 acres of land in Gustavus Bunson Survey #541½, Abst.#34, San Saba County, Texas, 75.75 acres of land of which is in the First Tract described in deed from William Tom Taff, et ux, to Helen V. Miller, Jack T. Taff, and John L. Taff by deed dated August 19, 1980, and recorded in Vol. #171, page #1, San Saba County Deed Records, and 74.25 acres of which is in the Second Tract described in said deed recorded in Vol. #171, page #1, San Saba County Deed Records.

BEGINNING at an iron stake and corner post located at the SW corner of the S.A. Wilson Survey #541 and the most northerly NW corner of said Gustavus Bunson Survey#541½.

THENCE S 0°07' W 1671.1 ft. along a fence line representing the west line of said Survey #541½ to an iron stake and corner post.

THENCE S 3°44' E 614.2 ft. along a fence line to a point located in the center of a public road. Said point is located 15 ft. S 3°44' E of an iron stake and corner post.

THENCE along the center of said public road as follows:
N 75°19' E 318.3 ft. to a point located 19 ft. South of an iron stake;
N 89°21' E 223.5 ft. to a point located 22 ft. S 9° W of an iron stake;
S 76°04' E 709.8 ft. to a point located 13 ft. S 13° W of an iron stake;
S 80°04' E 444.6 ft. to a point located 14 ft. S 7° W of an iron stake;
S 82°38' E 397.1 ft. to a point located 20 ft. S 15° E of an iron stake;
N 66°16' E 569.5 ft. to a point located 16 ft. S 35° E of an iron stake;
N 51°45' E 354.7 ft. to a point located 15 ft. S 40° E of an iron stake;
N 54°27' E 377.0 ft. to a point located 15 ft. S 43° E of an iron stake; and
N 47°32' E 601.6 ft. to a point located 15.2 ft. S 55°45' E of an iron stake.

THENCE N 55°45' W 2529.8 ft. to an iron stake and corner post located at the SE corner of said Survey #541 and an inside corner of said Survey #541½.

THENCE N 89°57' W 1547.9 ft. along a fence line to the place of beginning and containing 150.00 acres of land, 2.29 acres of which is in a public road, leaving 147.71 acres not encroached upon.

# TRACT THREE
## Parcel One:

Plat and field notes of a tract of land lying in the City of San Saba, County of San Saba, State of Texas containing 1.74 acres out of the O. Wilcox Survey #32, Abstract #1396. Said 1.74 acre tract of land is also a part of that land known as the San Saba Industrial Park as described in a deed from the San Saba Industrial Foundation, Inc. to the City of San Saba recorded in Volume 187, Page 368 of the San Saba County Deed Records.

BEGINNING at a 1/2" iron pin (found) for the northeast corner of a 2.00 acre tract of land as described in Volume 218, Page 105; said iron pin being 60.0 feet S 00°24' E of and 306.52 feet N 89°55" E of the northwest corner of said Industrial Park;

THENCE S 00°24' E 353.41 feet along the east line of said 2.00 acre tract to a 1/2" iron pin (found) for the southeast corner of said 2.00 acre tract, the same being the northeast corner of another 2.00 acre tract described in Volume 207, Page 443 and the northwest corner of a 1.93 acre tract described in Volume 219, Page 31 of said county deed records;

THENCE N 89°55' E 213.90 feet along the north line of said 1.93 acre tract to a 1/2" iron pin (found) in the west line of a gravel street, 15.0 feet east of a pipe fence, for the northeast corner of said 1.93 acre tract;

THENCE N 00°24' W 353.41 feet along the west line of said gravel street to a 1/2" iron pin (set) in the south line of another street (unopened), 11.9 feet east of said pipe fence, for the northeast corner of this 1.74 acre tract;

THENCE S 89°55' W 213.90 feet along the south line of said unopened street to place of beginning.

I, George M. Amthor III, Registered Professional Land Surveyor, do hereby certify that the plat and field notes shown herein represent an on-the-ground survey made under my direction and supervision on July 11, 1997 and to the best of my knowledge and belief represent the facts found at the time of survey.

WITNESS MY HAND AND SEAL

George M. Amthor III
R.P.L.S. No. 2684

## TRACT THREE,
### Parcel Two:

Plat and field notes of a tract of land lying in the City of San Saba, County of San Saba, State of Texas containing 1.93 acres out of the O. Wilcox Survey #38, Abstract #1396. Said 1.93 acre tract of land is also a part of that land known as the San Saba Industrial Park as described in a deed from the San Saba Industrial Foundation, Inc. to the City of San Saba recorded in Volume 187, Page 368 of the San Saba County Deed Records.

BEGINNING at a 1/2" iron pin (found) in the north line of Pierce Street for the southwest corner of this 1.93 acre tract and the southeast corner of a 2.00 acre tract recorded in Volume 190, Page 661, and being 734.97 feet S 00°24' E of and 311.40 feet S 80°14' E of the northwest corner of said Industrial Park;

THENCE N 00°24'00" W 374.82 feet along the east line of said 2.00 acre tract to a 1/2" iron pin (found) for the northeast corner of said 2.00 acre tract;

THENCE N 89°55'00" E 213.90 feet to a 1/2" iron pin (set) in the west line of a future 50 foot street for the northeast corner of this 1.93 acre tract;

THENCE S 00°24'00" E 411.59 feet along the west line of said future street to a 1/2" iron pin (set) in the north line of said Pierce Street;

THENCE N 80°14'00" W 217.31 feet along the north line of said Pierce Street to place of beginning and containing 1.93 acres;

I, George M. Anthor III, Registered Professional Land Surveyor, do hereby certify that the plat and field notes shown hereon represent an on-the-ground survey made under my direction and supervision on March 10, 1995 and to the best of my knowledge and belief represent the facts found at the time of survey.

WITNESS MY HAND AND SEAL

George M. Anthor III
R.P.L.S. No. 2684

**TRACT THREE,**
**Parcel Three:**

Field notes of a tract of land lying in the City of San Saba, County of San Saba, State of Texas, containing 2.00 acres out of the O. Wilcox Survey #38, Abstract #1396. Said tract is a part of a larger tract of land known as the San Saba Industrial Park described in a deed from William Pat Murray and wife to the San Saba Industrial Foundation, Inc., recorded in Volume 167, Page 241 of the San Saba County Deed Records. Survey was made for the San Saba Industrial Foundation.

BEGINNING at a 1/2" iron pin (set) at the intersection of the east line of an unopened street, 60 feet in width, with the south line of another unopened future street, 60 feet in width, for the northwest corner of this tract. Said beginning corner lies 60.42 feet East of and 59.91 feet South of the northwest corner of the San Saba Industrial Park.

THENCE N 89° 55' E 246.52 feet along the south line of said future street to a 1/2" iron pin (set) for the northeast corner of this tract.

THENCE departing said future street S 00° 24' E 353.41 feet to a 1/2" iron pin (set) for the southeast corner of this tract.

THENCE S 89° 55' W 246.52 feet to a 1/2" iron pin (set) in the east line of said unopened street, 60 feet in width, for the southwest corner of this tract.

THENCE N 00° 24' W 353.41 feet along said east line of unopened street to place of beginning and containing 2.00 acres of land according to my survey and calculations.

RECORDERS MEMORANDUM
All or parts of the text on this page was not clearly legible for satisfactory recordation.

**TRACT THREE,**
**Parcel Four:**

Field notes of a tract of land lying in the City of San Saba, County of San Saba, State of Texas, containing 2.00 acres out of the O. Wilcox Survey #38, Abstract #1396. Said tract is a part of a larger tract of land known as the San Saba Industrial Park described in a deed from William Pat Murray and wife to the San Saba Industrial Foundation, Inc., recorded in Volume 167, Page 261 of the San Saba County Deed Records. Survey was made for the San Saba Industrial Foundation.

BEGINNING at a 1/2" iron pin (set) in the east line of a strip of land, 60 feet wide, reserved for a future street. Said pin, being the northwest corner of this tract, lies 60.42 feet East of and 413.32 feet South of the northwest corner of the San Saba Industrial Park.

THENCE N 89° 55' E 246.52 feet to a 1/2" iron pin (set) for the northeast corner of this tract.

THENCE S 00° 24' E 374.82 feet to a 1/2" iron pin (set) in the north line of Pierce Street for the southeast corner of this tract.

THENCE N 80° 14' W 250.45 feet along the north line of Pierce Street to a 1/2" iron pin (set) for the southwest corner of this tract.

THENCE N 00° 24' W 331.99 feet, parallel with and 60 feet easterly of the west line of the San Saba Industrial Park, to place of beginning.

(29) ITC

**FILED AND RECORDED**

OFFICIAL PUBLIC RECORDS   2009022364

*Nancy E. Rister*

04/02/2009 02:23 PM

SURRATT $92.00

NANCY E. RISTER, COUNTY CLERK

WILLIAMSON COUNTY, TEXAS

RECORDERS MEMORANDUM

All or parts of the text on this page was not clearly legible for satisfactory recordation.

ASSN
2009022365

14 PGS

**RECORDATION**
   **REQUESTED BY:**
   Celtic Bank Corporation
   340 East 400 South
   Salt Lake City, UT  84111

**WHEN RECORDED MAIL**
   **TO:**
   Celtic Bank Corporation
   340 East 400 South
   Salt Lake City, UT  84111

**SEND TAX NOTICES TO:**
   Celtic Bank Corporation
   340 East 400 South
   Salt Lake City, UT  84111                     **FOR RECORDER'S USE ONLY**

0903822-DPF

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

## ASSIGNMENT OF RENTS

THIS ASSIGNMENT OF RENTS dated March 27, 2009, is made and executed between JACOBS & SON ENTERPRISES, INC. (referred to below as "Grantor") and Celtic Bank Corporation, whose address is 340 East 400 South, Salt Lake City, UT  84111 (referred to below as "Lender").

**ASSIGNMENT.** For valuable consideration, Grantor hereby assigns, grants a continuing security interest in, and conveys to Lender all of Grantor's right, title, and interest in and to the Rents from the following described Property located in Williamson (as to Tract 1); San Saba (as to Tract 2 and 3) County, State of Texas:

   See Exhibit A, which is attached to this Assignment and made a part of this Assignment as if fully set forth herein.

The Property or its address is commonly known as  1408 North Bell Blvd. (as to Tract 1); 1210 W. Pierce (as to Tract 3, Parcels 1, 2, 3, and 4), Cedar Park  (as to Tract 1); San Saba (as to Tract 2 and 3), TX 78613. The Property tax identification number is 17-W339-0100-0001-0010 (as to Tract 1); 32224 (as to Tract 2); 85 (as to Tract 2); 5098 (as to Tract 3, Parcel 1); 5094 (as to Tract 3, Parcel 2); 4959 (as to Tract 3, Parcel 3); 4958 (as to Tract 3, Parcel 4).

THIS ASSIGNMENT IS GIVEN TO SECURE  (1) PAYMENT OF THE INDEBTEDNESS AND  (2) PERFORMANCE OF ANY AND ALL OBLIGATIONS OF BORROWER AND GRANTOR UNDER THE NOTE, THIS ASSIGNMENT, AND THE RELATED DOCUMENTS. THIS ASSIGNMENT IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

**GRANTOR'S WAIVERS.**  Grantor waives all rights or defenses arising by reason of any "one action" or "anti-deficiency" law, or any other law which may prevent Lender from bringing any action against Grantor, including a claim for deficiency to the extent Lender is otherwise entitled to a claim for deficiency, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale.

**BORROWER'S WAIVERS AND RESPONSIBILITIES.**  Lender need not tell Borrower about any action or inaction Lender takes in connection with this Assignment. Borrower assumes the responsibility for being and keeping informed about the Property. Borrower waives any defenses that may arise because of any action or inaction of Lender, including without limitation any failure of Lender to realize upon the Property, or any delay by Lender in realizing upon the

# ASSIGNMENT OF RENTS

## (Continued)

Property. Borrower agrees to remain liable under the Note with Lender no matter what action Lender takes or fails to take under this Assignment.

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Assignment or any Related Documents, Grantor shall pay to Lender all amounts secured by this Assignment as they become due, and shall strictly perform all of Grantor's obligations under this Assignment. Unless and until Lender exercises its right to collect the Rents as provided below and so long as there is no default under this Assignment, Grantor may remain in possession and control of and operate and manage the Property and collect the Rents, provided that the granting of the right to collect the Rents shall not constitute Lender's consent to the use of cash collateral in a bankruptcy proceeding.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that:

**Ownership.** Grantor is entitled to receive the Rents free and clear of all rights, loans, liens, encumbrances, and claims except as disclosed to and accepted by Lender in writing.

**Right to Assign.** Grantor has the full right, power and authority to enter into this Assignment and to assign and convey the Rents to Lender.

**No Prior Assignment.** Grantor has not previously assigned or conveyed the Rents to any other person by any instrument now in force.

**No Further Transfer.** Grantor will not sell, assign, encumber, or otherwise dispose of any of Grantor's rights in the Rents except as provided in this Assignment.

**LENDER'S RIGHT TO RECEIVE AND COLLECT RENTS.** Lender shall have the right at any time, and even though no default shall have occurred under this Assignment, to collect and receive the Rents. For this purpose, Lender is hereby given and granted the following rights, powers and authority:

**Notice to Tenants.** Lender may send notices to any and all tenants of the Property advising them of this Assignment and directing all Rents to be paid directly to Lender or Lender's agent.

**Enter the Property.** Lender may enter upon and take possession of the Property; demand, collect and receive from the tenants or from any other persons liable therefor, all of the Rents; institute and carry on all legal proceedings necessary for the protection of the Property, including such proceedings as may be necessary to recover possession of the Property; collect the Rents and remove any tenant or tenants or other persons from the Property.

**Maintain the Property.** Lender may enter upon the Property to maintain the Property and keep the same in repair; to pay the costs thereof and of all services of all employees, including their equipment, and of all continuing costs and expenses of maintaining the Property in proper repair and condition, and also to pay all taxes, assessments and water utilities, and the premiums on fire and other insurance effected by Lender on the Property.

**Compliance with Laws.** Lender may do any and all things to execute and comply with the laws of the State of Texas and also all other laws, rules, orders, ordinances and requirements of all other governmental agencies affecting the Property.

**Lease the Property.** Lender may rent or lease the whole or any part of the Property for such term or terms and on such conditions as Lender may deem appropriate.

**Employ Agents.** Lender may engage such agent or agents as Lender may deem appropriate, either in Lender's name or in Grantor's name, to rent and manage the Property, including the collection and application of Rents.

**Other Acts.** Lender may do all such other things and acts with respect to the Property as Lender may deem appropriate and may act exclusively and solely in the place and stead of Grantor and to have all of the powers of Grantor for the purposes stated above.

**No Requirement to Act.** Lender shall not be required to do any of the foregoing acts or things, and the fact that Lender shall have performed one or more of the foregoing acts or things shall not require Lender to do any other specific act or thing.

**APPLICATION OF RENTS.** All costs and expenses incurred by Lender in connection with the Property shall be for Grantor's account and Lender may pay such costs and expenses from the Rents. Lender, in its sole discretion, shall determine the application of any and all Rents received by it; however, any such Rents received by Lender which are not applied to such costs and expenses shall be applied to the Indebtedness. All expenditures made by Lender under this Assignment and not reimbursed from the Rents shall become a part of the Indebtedness secured by this Assignment, and shall be payable on demand, with interest at the Note rate from date of expenditure until paid.

**FULL PERFORMANCE.** If Grantor pays all of the Indebtedness when due and otherwise performs all the obligations imposed upon Grantor under this Assignment, the Note, and the Related Documents, Lender shall execute and deliver to Grantor a suitable satisfaction of this Assignment and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Property. Any termination fee required by law shall be paid by Grantor, if permitted by applicable law.

## ASSIGNMENT OF RENTS

### (Continued)

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Assignment or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Assignment or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Rents or the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. To the extent permitted by applicable law, all such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Assignment also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Assignment:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower or Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Assignment or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Grantor.

**Default on Other Payments.** Failure of Grantor within the time required by this Assignment to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Default in Favor of Third Parties.** Borrower, any guarantor or Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's, any guarantor's or Grantor's property or ability to perform their respective obligations under this Assignment or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Assignment or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Assignment or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Borrower's or Grantor's existence as a going business, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against the Rents or any property securing the Indebtedness. This includes a garnishment of any of Borrower's or Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Property Damage or Loss.** The Property is lost, stolen, substantially damaged, sold, or borrowed against.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Assignment within the preceding twelve (12) months, it may be cured if Grantor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within thirty (30) days; or (2) if the cure requires more than thirty (30) days, immediately initiates steps which

**ASSIGNMENT OF RENTS**

**(Continued)**

Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of any Event of Default and at any time thereafter, Lender may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

  **Accelerate Indebtedness.** Lender shall have the right at its option without notice to Borrower or Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty that Borrower would be required to pay.

  **Collect Rents.** Lender shall have the right, without notice to Borrower or Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender shall have all the rights provided for in the Lender's Right to Receive and Collect Rents Section, above. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

  **Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

  **Other Remedies.** Lender shall have all other rights and remedies provided in this Assignment or the Note or by law.

  **Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Assignment, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

  **Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Assignment, Lender shall be entitled to recover such sum as the court may adjudge reasonable as Lender's attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including Lender's reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law. In the event of foreclosure of this Assignment, Lender shall be entitled to recover from Borrower or Grantor Lender's reasonable attorneys' fees and actual disbursements that Lender necessarily incurs in pursuing such foreclosure.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Assignment:

  **Amendments.** This Assignment, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Assignment. No alteration of or amendment to this Assignment shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

  **Caption Headings.** Caption headings in this Assignment are for convenience purposes only and are not to be used to interpret or define the provisions of this Assignment.

  **Applicable Law.** The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations: (a) When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law. (b) Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from

## ASSIGNMENT OF RENTS
**Loan No: 15009287**                          (Continued)                          **Page 5**

local or state control, penalty, tax or liability. No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan. Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Salt Lake County, State of Utah.

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Assignment shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Grantor signing below is responsible for all obligations in this Assignment. Where any one or more of the parties is a corporation, partnership, limited liability company or similar entity, it is not necessary for Lender to inquire into the powers of any of the officers, directors, partners, members, or other agents acting or purporting to act on the entity's behalf, and any obligations made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Assignment.

**Merger.** There shall be no merger of the interest or estate created by this assignment with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Interpretation.** (1)   In all cases where there is more than one Borrower or Grantor, then all words used in this Assignment in the singular shall be deemed to have been used in the plural where the context and construction so require. (2)   If more than one person signs this Assignment as "Grantor," the obligations of each Grantor are joint and several. This means that if Lender brings a lawsuit, Lender may sue any one or more of the Grantors. If Borrower and Grantor are not the same person, Lender need not sue Borrower first, and that Borrower need not be joined in any lawsuit. (3)   The names given to paragraphs or sections in this Assignment are for convenience purposes only. They are not to be used to interpret or define the provisions of this Assignment.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Assignment unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Assignment shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Assignment. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Assignment, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Assignment shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Assignment. Any party may change its address for notices under this Assignment by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Powers of Attorney.** The various agencies and powers of attorney conveyed on Lender under this Assignment are granted for purposes of security and may not be revoked by Grantor until such time as the same are renounced by Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Assignment to be illegal, invalid, or unenforceable as to any person or circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other person or circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Assignment. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Assignment shall not affect the legality, validity or enforceability of any other provision of this Assignment.

**Successors and Assigns.** Subject to any limitations stated in this Assignment on transfer of Grantor's interest, this Assignment shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Assignment and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Assignment or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Assignment.

## ASSIGNMENT OF RENTS

**Loan No: 15009287**
### (Continued)

**Waive Jury.** All parties to this Assignment hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**Waiver of Right of Redemption.** NOTWITHSTANDING ANY OF THE PROVISIONS TO THE CONTRARY CONTAINED IN THIS ASSIGNMENT, GRANTOR HEREBY WAIVES ANY AND ALL RIGHTS OF REDEMPTION FROM SALE UNDER ANY ORDER OR JUDGMENT OF FORECLOSURE ON GRANTOR'S BEHALF AND ON BEHALF OF EACH AND EVERY PERSON, EXCEPT JUDGMENT CREDITORS OF GRANTOR, ACQUIRING ANY INTEREST IN OR TITLE TO THE PROPERTY SUBSEQUENT TO THE DATE OF THIS ASSIGNMENT.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Assignment. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Assignment shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Assignment.** The word "Assignment" means this ASSIGNMENT OF RENTS, as this ASSIGNMENT OF RENTS may be amended or modified from time to time, together with all exhibits and schedules attached to this ASSIGNMENT OF RENTS from time to time.

**Borrower.** The word "Borrower" means JACOBS & SON ENTERPRISES, INC..

**Default.** The word "Default" means the Default set forth in this Assignment in the section titled "Default".

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Assignment in the default section of this Assignment.

**Grantor.** The word "Grantor" means JACOBS & SON ENTERPRISES, INC.; Tony L. Jacobs; and Janie S. Jacobs.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Assignment, together with interest on such amounts as provided in this Assignment.

**Lender.** The word "Lender" means Celtic Bank Corporation, its successors and assigns.

**Note.** The word "Note" means the promissory note dated March 27, 2009, **in the original principal amount of $1,726,000.00** from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Assignment" section of this Assignment.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all of Grantor's present and future rights, title and interest in, to and under any and all present and future leases, including, without limitation, all rents, revenue, income, issues, royalties, bonuses, accounts receivable, cash or security deposits, advance rentals, profits and proceeds from the Property, and other payments and benefits derived or to be derived from such leases of every kind and nature, whether due now or later, including without limitation Grantor's right to enforce such leases and to receive and collect payment and proceeds thereunder.

# ASSIGNMENT OF RENTS
## (Continued)

**Loan No: 15009287**                                                                 **Page 7**

THE UNDERSIGNED ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS ASSIGNMENT, AND NOT PERSONALLY BUT AS AN AUTHORIZED SIGNER, HAS CAUSED THIS ASSIGNMENT TO BE SIGNED AND EXECUTED ON BEHALF OF GRANTOR ON MARCH 27, 2009.

**GRANTOR:**

JACOBS & SON ENTERPRISES, INC.

By: _____
    Tony L. Jacobs, CEO of JACOBS & SON ENTERPRISES, INC.

By: _____
    Dean A. Smith, President of JACOBS & SON ENTERPRISES, INC.

By: _____
    Jamie S. Jacobs, Secretary of JACOBS & SON ENTERPRISES, INC.

X _____
    Tony L. Jacobs, Individually

X _____
    Jamie S. Jacobs, Individually

## CORPORATE ACKNOWLEDGMENT

STATE OF ___Texas___                          )
                                              ) SS
COUNTY OF ___Travis___                        )

This instrument was acknowledged before me on ___MAR. 27___, 20_09_ by Tony L. Jacobs, CEO of JACOBS & SON ENTERPRISES, INC.; Dean A. Smith, President of JACOBS & SON ENTERPRISES, INC.; and Jamie S. Jacobs, Secretary of JACOBS & SON ENTERPRISES, INC. a Texas corporation, on behalf of said corporation.

DAN P PHARES
Notary Public, State Of Texas
My Commission Expires
08-31-2009

_____
Notary Public, State of Texas

## ASSIGNMENT OF RENTS
(Continued)

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _____*Texas*_____ }
                           } SS
COUNTY OF _____*Travis*_____ }

This instrument was acknowledged before me on _____*Mar. 27*_____, 20_*09*_ by Tony L. Jacobs and Janie S. Jacobs.

DAN P PHARES
Notary Public, State Of Texas
My Commission Expires
08-31-2009

_____
Notary Public, State of Texas

Exhibit A

**Tract One:**   Lot 1, Replat of Lots 14-18, R. E. Newsom Mobile Home Subdivision, a subdivision in Williamson County, Texas according to the plat thereof recorded in Cabinet L, Slide 341, Plat Records, Williamson County, Texas.

**TRACT TWO:**

150.00 acres of land in Gustavus Bunson Survey #541½, Abst.#34, San Saba County, Texas, 75.75 acres of land of which is in the First Tract described in deed from William Tom Taff, et ux, to Helen V. Miller, Jack T. Taff, and John L. Taff by deed dated August 19, 1980, and recorded in Vol. #171, page #1, San Saba County Deed Records, and 74.25 acres of which is in the Second Tract described in said deed recorded in Vol. #171, page #1, San Saba County Deed Records.

BEGINNING at an iron stake and corner post located at the SW corner of the S.A. Wilson Survey #541 and the most northerly NW corner of said Gustavus Bunson Survey#541½.

THENCE S 0°07' W 1671.1 ft. along a fence line representing the west line of said Survey #541½ to an iron stake and corner post.

THENCE S 3°44' E 614.2 ft. along a fence line to a point located in the center of a public road. Said point is located 15 ft. S 3°44' E of an iron stake and corner post.

THENCE along the center of said public road as follows:
N 75°19' E 318.3 ft. to a point located 19 ft. South of an iron stake;
N 89°21' E 223.5 ft. to a point located 22 ft. S 9° W of an iron stake;
S 76°04' E 709.8 ft. to a point located 13 ft. S 13° W of an iron stake;
S 80°04' E 444.6 ft. to a point located 14 ft. S 7° W of an iron stake;
S 82°38' E 397.1 ft. to a point located 20 ft. S 15° E of an iron stake;
N 66°16' E 569.5 ft. to a point located 16 ft. S 35° E of an iron stake;
N 51°45' E 354.7 ft. to a point located 15 ft. S 40° E of an iron stake;
N 54°27' E 377.0 ft. to a point located 15 ft. S 43° E of an iron stake; and
N 47°32' E 601.6 ft. to a point located 15.2 ft. S 55°45' E of an iron stake.

THENCE N 55°45' W 2529.8 ft. to an iron stake and corner post located at the SE corner of said Survey #541 and an inside corner of said Survey #541½.

THENCE N 89°57' W 1547.9 ft. along a fence line to the place of beginning and containing 150.00 acres of land, 2.29 acres of which is in a public road, leaving 147.71 acres not encroached upon.

# TRACT THREE
## Parcel One:

Plat and field notes of a tract of land lying in the City of San Saba, County of San Saba, State of Texas containing 1.74 acres out of the O. Wilcox Survey #3B, Abstract #1396. Said 1.74 acre tract of land is also a part of that land known as the San Saba Industrial Park as described in a deed from the San Saba Industrial Foundation, Inc. to the City of San Saba recorded in Volume 187, Page 368 of the San Saba County Deed Records.

BEGINNING at a 1/2" iron pin (found) for the northeast corner of a 2.00 acre tract of land as described in Volume 218, Page 105; said iron pin being 60.0 feet S 00°24' E of and 306.53 feet N 89°55" E of the northwest corner of said Industrial Park;

THENCE S 00°24' E 353.41 feet along the east line of said 2.00 acre tract to a 1/2" iron pin (found) for the southeast corner of said 2.00 acre tract, the same being the northeast corner of another 2.00 acre tract described in Volume 207, Page 443 and the northwest corner of a 1.93 acre tract described in Volume Volume 219, Page 31 of said county deed records;

THENCE N 89°55' E 213.90 feet along the north line of said 1.93 acre tract to a 1/2" iron pin (found) in the west line of a gravel street, 15.0 feet east of a pipe fence, for the northeast corner of said 1.93 acre tract;

THENCE N 00°24' W 353.41 feet along the west line of said gravel street to a 1/2" iron pin (set) in the south line of another street (unopened), 11.9 feet east of said pipe fence, for the northeast corner of this 1.74 acre tract;

THENCE S 89°55' W 213.90 feet along the south line of said unopened street to place of beginning.

I, George M. Amthor III, Registered Professional Land Surveyor, do hereby certify that the plat and field notes shown hereon represent an on-the-ground survey made under my direction and supervision on July 11, 1997 and to the best of my knowledge and belief represent the facts found at the time of survey.

WITNESS MY HAND AND SEAL

George M. Amthor III
R.P.L.S. No. 2604

RECORDERS MEMORANDUM
All or parts of the text on this page was not
clearly legible for satisfactory recordation.

## TRACT THREE,
### Parcel Two:

Plat and field notes of a tract of land lying in the City of San Saba, County of San Saba, State of Texas containing 1.93 acres out of the O. Wilcox Survey #38, Abstract #1396.  Said 1.93 acre tract of land is also a part of that land known as the San Saba Industrial Park as described in a deed from the San Saba Industrial Foundation, Inc. to the City of San Saba recorded in Volume 187, Page 368 of the San Saba County Deed Records.

BEGINNING at a 1/2" iron pin (found) in the north line of Pierce Street for the southwest corner of this 1.93 acre tract and the southeast corner of a 2.00 acre tract recorded in Volume 190, Page 661, and being 754.97 feet S 00°24' E of and 311.40 feet S 80°14' E of the northwest corner of said Industrial Park;

THENCE N 00°24'00" W 374.82 feet along the east line of said 2.00 acre tract to a 1/2" iron pin (found) for the northeast corner of said 2.00 acre tract;

THENCE N 89°55'00" E 213.90 feet to a 1/2" iron pin (set) in the west line of a future 50 foot street for the northwest corner of this 1.93 acre tract;

THENCE S 00°24'00" E 411.99 feet along the west line of said future street to a 1/2" iron pin (set) in the north line of said Pierce Street;

THENCE N 80°14'00" W 217.31 feet along the north line of said Pierce Street to place of beginning and containing 1.93 acres;

I, George M. Amthor III, Registered Professional Land Surveyor, do hereby certify that the plat and field notes shown hereon represent an on-the-ground survey made under my direction and supervision on March 10, 1995 and to the best of my knowledge and belief represent the facts found at the time of survey.

WITNESS MY HAND AND SEAL.

George M. Amthor III
R.P.L.S. No. 2684

## TRACT THREE,
## Parcel Three:

Field notes of a tract of land lying in the City of San Saba, County of San Saba, State of Texas, containing 2.00 acres out of the O. Wilcox Survey #38, Abstract #1396. Said tract is a part of a larger tract of land known as the San Saba Industrial Park described in a deed from William Pat Murray and wife to the San Saba Industrial Foundation, Inc., recorded in Volume 167, Page 241 of the San Saba County Deed Records. Survey was made for the San Saba Industrial Foundation.

BEGINNING at a 1/2" iron pin (set) at the intersection of the east line of an unopened street, 60 feet in width, with the south line of another unopened future street, 60 feet in width, for the northwest corner of this tract. Said beginning corner lies 60.42 feet East of and 59.91 feet South of the northwest corner of the San Saba Industrial Park.

THENCE N 89° 55' E 246.52 feet along the south line of said future street to a 1/2" iron pin (set) for the northeast corner of this tract.

THENCE departing said future street S 00° 24' E 353.41 feet to a 1/2" iron pin (set) for the southeast corner of this tract.

THENCE S 89° 55' W 246.52 feet to a 1/2" iron pin (set) in the east line of said unopened street, 60 feet in width, for the southwest corner of this tract.

THENCE N 00° 24' W 353.41 feet along said east line of unopened street to place of beginning and containing 2.00 acres of land according to my survey and calculations.

**TRACT THREE,**
**Parcel Four:**

Field notes of a tract of land lying in the City of San Saba, County of San Saba, State of Texas, containing 2.00 acres out of the D. Wilcox Survey #38, Abstract #1396. Said tract is a part of a larger tract of land known as the San Saba Industrial Park described in a deed from William Pat Murray and wife to the San Saba Industrial Foundation, Inc., recorded in Volume 167, Page 241 of the San Saba County Deed Records. Survey was made for the San Saba Industrial Foundation.

BEGINNING at a 1/2" iron pin (set) in the east line of a strip of land, 60 feet wide, reserved for a future street. Said pin, being the northwest corner of this tract, lies 60.42 feet East of and 413.32 feet South of the northwest corner of the San Saba Industrial Park.

THENCE N 89° 55' E 246.52 feet to a 1/2" iron pin (set) for the northeast corner of this tract.

THENCE S 00° 24' E 374.82 feet to a 1/2" iron pin (set) in the north line of Pierce Street for the southeast corner of this tract.

THENCE N 80° 14' W 250.45 feet along the north line of Pierce Street to a 1/2" iron pin (set) for the southwest corner of this tract.

THENCE N 00° 24' W 331.99 feet, parallel with and 60 feet easterly of the west line of the San Saba Industrial Park, to place of beginning.

(29) ITC

**FILED AND RECORDED**

OFFICIAL PUBLIC RECORDS   2009022365

*Nancy E. Rister*

04/02/2009 02:23 PM
SURRATT $76.00
NANCY E. RISTER, COUNTY CLERK
WILLIAMSON COUNTY, TEXAS

RECORDERS MEMORANDUM
All or parts of the text on this page was not
clearly legible for satisfactory recordation.